NEW JERSEY BANK, N.A., a banking corporation of the United States, Plaintiff,

v.

OAKLAND SHOPPING PLAZA, a New Jersey partnership, Defendant.

Civ. A. No. 82–2411.

United States District Court, D. New Jersey.

Nov. 23, 1982.

Evans, Hand, Allabough & Amoresano by Douglas C. Borchard, Jr., West Paterson, N.J., for plaintiff.

Okin, Pressler & Shapiro by David G. Hahn, Fort Lee, N.J., for defendant.

## OPINION

CLARKSON S. FISHER, Chief Judge.

This is an appeal from a bankruptcy court order of May 7, 1982, which denied debtor-appellant Oakland Shopping Plaza's request for a hearing to establish the allowed secured value of creditor-appellee New Jersey Bank's claim and denying appellant's request for a hearing on its plan of reorganization filed with the bankruptcy court on November 18, 1981. For the reasons outlined herein, the bankruptcy court order is upheld.

Appellant is a New Jersey general partnership whose principal asset is a shopping center located in Oakland, New Jersey. In 1974 appellant borrowed $23 million from appellee to complete construction of this center and gave as security a first mortgage on the property, which matured on June 1, 1974. Appellee also gave a permanent mortgage on the condition that appellant obtain a certain type and amount of tenancies for the complex by the maturity date. Subsequently, these terms not having been carried out to its satisfaction, New Jersey Bank brought a foreclosure action which was decided in its favor by the court on September 23, 1975. Appellee then, however, agreed to extend the maturity date for several years while appellant attempted to work out its difficulties.

Eventually, appellee sought to arrange a foreclosure sale by the Bergen County Sher-

iff in accord with the 1975 judgment. Appellant responded on January 14, 1981 by filing a chapter 11 bankruptcy petition, thereby obtaining an automatic stay from the foreclosure. Six days later, appellee filed a complaint in bankruptcy court seeking an order dissolving the automatic stay and establishing the validity and amount of its mortgage lien on the shopping-center property. On September 29, 1981, Judge DeVito of the bankruptcy court ordered the automatic stay vacated as to New Jersey Bank and did not rule on appellant's application for a determination of the "allowed secured value" of New Jersey Bank's claim under section 506 of the Bankruptcy Code. After filing a notice of appeal of this order,[1] appellant filed a reorganization plan with the bankruptcy court and requested that court to schedule a confirmation hearing on the plan. By order of May 7, 1982, Judge DeVito refused either to schedule such a hearing or to make the requested section 506 determination of the value of New Jersey Bank's allowed secured claim.

Appellant contends that the bankruptcy court declined to conduct a confirmation hearing or a section 506 hearing because it believed the pending appeal of its automatic stay vacation order divested it of jurisdiction over these matters. Appellant thus argues that the court could still make the asked-for determinations because they involve issues unrelated to the bankruptcy court's ruling on the automatic stay. As demonstrated by the transcript of the May 3 hearing on the matter, however, Judge DeVito did not fail to act on appellant's requests because of a perceived "lack of jurisdiction" over these matters. Instead, he ruled that he would not conduct a section 506 hearing on the value of debtor's shopping center in view of the fact that, should the court of appeals affirm his order vacating the stay, such a valuation would be useless and meaningless.

The vacation of the automatic stay is hardly "unrelated" to a section 506 valuation. The shopping center is concededly appellant's only substantial asset (Appel-

lant's Brief at p. 4; Appellee's Brief at p. 4). Therefore, a valuation of such asset would serve no useful purpose if the bankruptcy court's vacation order was upheld and appellee allowed forthwith to foreclose on the property.

Appellant contends that a valuation of New Jersey Bank's allowed secured claim is necessary as "an essential ingredient to confirmation of its Chapter 11 plan" (Appellant's Brief at p. 14). This, however, provides no additional rationale for the bankruptcy court's conducting such a valuation, as the court correctly declined to schedule a confirmation hearing on appellant's plan. As that court recognized, the debtor's payment of its creditors under its proposed reorganization plan is "centered entirely upon its realization of the sale of the property which in itself is all contingent with so many variables that its outcome is not, cannot necessarily be, projected as a sure thing" (Transcript of May 3 Bankruptcy Court Proceeding at p. 24).

In view of the fact that an affirmance of the bankruptcy court's previous order vacating the stay would render any chapter 11 plan totally unworkable, it would be unproductive and potentially wasteful to conduct a hearing on such a plan at this time. In any event, it has been recognized that the policy behind the adoption of chapter 11 is to encourage *alternatives* to liquidation, and that a chapter 11 reorganization should only be implemented where "the debtor is motivated by a legitimate reorganization purpose and not solely or predominately by the desire to prevent foreclosure." *In Re Chugiak Boat Works, Inc.,* 18 B.R. 292, 298 (Bkrtcy.D.Alaska 1982). In order to sustain a chapter 11 plan, a "proposed rehabilitation must be more than a nebulous adventure." *In Re Tracey Service Co., Inc.,* 17 B.R. 405, 409 (Bkrtcy.E.D.Pa.1982). *See also In Re K.C. Marsh Co., Inc.,* 12 B.R. 401 (Bkrtcy.D.Mass. 1981). Without a "reasonable amount of assets and a feasible operating business there is no logic in continuing a bankruptcy

---

1. This appeal is still pending before the United States Court of Appeals for the Third Circuit.

case under Chapter 11." *Tracey Service,* 17 B.R. at 409.

Appellant admits that its proposed reorganization plan is one of "orderly liquidation" (Appellant's Brief at p. 13 [emphasis added]) and, indeed, the plan requires it to dispose of its only significant asset. The bankruptcy court has already held, in its August 28, 1981 order currently under appeal, that no reasonable possibility of reorganization exists for the debtor. It would thus have been absurd for the bankruptcy court to schedule a confirmation hearing on a plan which it has already found unworkable and whose very tentative existence depends on its possession of an asset which that court has found to belong to one of its creditors. As appellant itself points out, "[t]he issues with respect to the bankruptcy court's order lifting the automatic stay are pending before the Court of Appeals for the Third Circuit" (Appellant's Brief at p. 6). It would be inappropriate, then, for this court to intervene and order a confirmation hearing and/or the section 506 valuation of New Jersey Bank's allowed secured claim necessary to such a hearing.

The bankruptcy court's decision should stand for the aforementioned reasons. It is thus unnecessary to determine whether the proposed reorganization plan conforms with the "cram down" provisions of section 1129(b) of the Code as appellant claims. Under the circumstances and current posture of this action,[2] a confirmation hearing and accompanying section 506 valuation hearing are unnecessary and unwarranted. The bankruptcy court's order of May 7, 1982 is upheld. Plaintiff will submit an order. No costs.

---

**2.** As Judge DeVito has pointed out, "it would be an anomalous situation to go forward with an evaluation hearing on a Chapter 11 cram down when an appeal from an order of this court permitting the bank to complete its foreclosure action in the State Court pursuant to the applicable provisions of Bankruptcy Code 362(d) is currently pending on appeal." Transcript of May 3 proceedings at p. 21.