### In re William Joseph WAMSGANZ and Wanda A. Scott Wamsganz, Debtors.

### Bankruptcy No. 85–00966(3).

United States Bankruptcy Court, E.D. Missouri, E.D.

Nov. 1, 1985.

---

T.J. Mullin, Norman W. Pressman, Clayton, Mo., for debtors.

Mark T. Stoll, Hillsboro, Mo., for Boatmen's Bank.

## MEMORANDUM

JAMES J. BARTA, Bankruptcy Judge.

At Saint Louis, in this District, this 1st day of November, 1985.

The matter being considered here is the motion of the Boatmen's Bank of DeSoto (Movant) to dismiss the Debtors' Chapter 11 Reorganization case. The facts which

appear from the record are essentially undisputed.

William Joseph Wamsganz, age 65, and his wife, Wanda A. Scott Wamsganz, age 63, filed this joint petition for relief under Chapter 11 on May 30, 1985, one day before the Movant's scheduled foreclosure sale of their non-residential real estate. The Debtors had previously filed a joint petition for relief under Chapter 13 (Adjustment of Debts of An Individual With Regular Income) on August 2, 1984, again one day before the Movant had scheduled a foreclosure sale of the same real property. On each occasion, the Movant had cancelled the sale in response to the automatic stay provisions of 11 U.S.C. 362.

In the earlier Chapter 13 case, the Debtors' attempts to obtain confirmation of a repayment plan were unsuccessful. On November 13, 1984, the Honorable Robert E. Brauer of this Court denied confirmation of the Debtors' original Chapter 13 plan and of their amended Chapter 13 plan. The basis for the denial was that the Debtors had attempted to impermissibly modify the rights of the holders of a lien interest which encumbered their principal residence.[1] Their principal residence was and is encumbered by a deed of trust which secures three notes to a second secured creditor, the Washington County Mercantile Bank (Washington Bank). In their Chapter 13 plans, the Debtors proposed to pay the Washington Bank in full from the proceeds of the sale of their principal residence not later than nine months after confirmation. The nine-month period would have allowed payment after the payment date of the original notes. Therefore, the plans called for a modification of the rights of a secured creditor's interests which encumbered the Debtors' principal residence. The Debtors' second amended plan was similarly denied confirmation on April 5, 1985 when the Debtors were unable to sell

---

1. Section 1322(b)(2) of Title 11 is as follows: "(b) Subject to subsections (a) and (c) of this section, the plan may—

....

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;"

sufficient real property to pay the Movant's debts which had matured and were due and payable in full prior to commencement of the Chapter 13 case. After a hearing on the Court's order to show cause why the case should not be dismissed or converted to a Chapter 7 case, Judge Brauer dismissed the Chapter 13 case by an order entered on April 30, 1985. Approximately one month later, the Debtors filed this Chapter 11 Business Reorganization case.

On September 6, 1985, an order was entered in this reorganization case granting the Washington Bank relief from the automatic stay to permit foreclosure of its interests on certain real property including the Debtors' principal residence. The Debtors had agreed to this relief by entering into a stipulation with the Washington Bank which permitted the Debtors to redeem the secured property prior to October 6, 1985. The Debtors had continued to reside on the Washington Bank property as of the date of the hearing on this motion to dismiss. To the extent that the Debtors have consented to relief from the automatic stay as of September 6, 1985, their position is inconsistent with their proposed Chapter 11 plan which would permit them to sell the Washington Bank land within 90 days after confirmation, or surrender title in full satisfaction of the debt.[2] Mrs. Wamsganz testified at the hearing in this matter that if the Washington Bank took possession of the principal residence, the Debtors would move onto the real property which is subject to the lien of the Boatmen's Bank (the movant here). She stated that the latter property is now occupied by one of their children. She stated further that she and her husband believed that the real property which is subject to the Movant's lien is worth more than $100,000.00. The total debt to the Movant was $57,621.37 when the Chapter 11 petition was filed.

■ The Movant has first argued that the Chapter 11 case should be dismissed because the petition was filed within 180 days of the dismissal of the Chapter 13 case. Section 109(f) of Title 11 of the United States Code states that:

"(f) Notwithstanding any other provision of this section, no individual may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—

(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or

(2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title."

Judge Brauer's order which dismissed the Chapter 13 case does not indicate that the Debtors' willfully failed to abide by the orders of the Court, or that they failed to appear before the Court in proper prosecution of the case. Therefore, after a review of the documents in the Chapter 13 file, it is the conclusion of this Court that the record does not establish that the Chapter 13 case was dismissed upon the conditions set out at Section 109(f); and that the Movant's request to dismiss this Chapter 11 case for having been filed within 180 days after these Debtors were debtors in a Chapter 13 case will be denied. See, *In re Curtis Lane Morris,* 49 B.R. 123 (Bkrtcy., W.D.Ky., 1985).

The parties have suggested that the pivotal issue in this case is the separate question of the Debtors' eligibility to be debtors in a Chapter 11 case, without regard to their unsuccessful efforts in the Chapter 13 case. Section 109 of the Bankruptcy Code limits access to Chapter 11 to those persons that may be debtors under Chapter 7, except a stockbroker, a commodity broker or

---

2. Although the Debtors have filed a disclosure statement in connection with the proposed plan, at their request, the matter has not been set for hearing pending a determination of this motion to dismiss.

a railroad.[3] The Debtors argue that as individuals, they are persons;[4] and because they do not fall within one of the classes of persons which are not eligible to proceed under Chapter 7,[5] they are eligible to be debtors under Chapter 11. The Movant has argued that the Debtors are not a business enterprise, and, therefore, the Chapter 11 Reorganization case should be dismissed for cause.

Section 109(d) does not specifically state that a debtor in a Chapter 11 case must be a business enterprise or a person engaged in business. However, such a requirement appears to be a logical, necessary and practical result of a consideration of the Congressional scheme set forth in the Bankruptcy Code generally and in Chapter 11 in particular.

In addition to describing who may be a debtor at Section 109, the Code's provisions are arranged in Chapters according to a particular type of debtor or debtor activity; Chapter 7, Liquidation, is available to most persons who may be debtors, but is generally considered to be the individual consumer debtor chapter; Chapter 9, Adjustment of the Debts of a Municipality is applicable only to a duly constituted municipality; Chapter 11, Reorganization, is available to any person who may be a debtor in a Chapter 7 case, but as noted below, presents a framework for the reorganization of a business; Chapter 13, Adjustment of Debts of an Individual With Regular Income, is limited to certain individuals whose maximum debt does not exceed specified amounts, and who are willing to commit future income to a repayment plan. Although there may be considerable overlap between some of the sections in some of the chapters in the Bankruptcy Code, it is clear that Congress did not intend that all persons be given a right to all the relief afforded by all the sections in Title 11.

Chapter 11 of Title 11 deals with business. The forty-six sections which comprise Subchapters I through III of Chapter 11 [6] anticipate the reorganization and continuation of a business enterprise; or a structured dismantling of a business and the liquidation and distribution of its assets.[7] For example, Section 1108 allows a Chapter 11 Debtor to remain in possession of its property and operate its business; Section 1113 provides that a Chapter 11 debtor may reject collective bargaining agreements; and Section 1129 permits confirmation of a Chapter 11 plan if (when applicable) the identity of post-confirmation officers and directors is disclosed. Chapter 11, therefore, is intended to deal with businesses as distinguished from individuals with a regular income (Chapter 13), municipalities (Chapter 9), and so-called consumer debtors (Chapter 7).

It cannot be said, however, that the Bankruptcy Code's categorization of debt-

---

**3.** Section 109(d) reads as follows:

"(d) Only a person that may be a debtor under chapter 7 of this title, except a stockbroker or a commodity broker, and a railroad may be a debtor under chapter 11 of this title."

**4.** Section 101(33) defines a person as follows:

"(33) [30] 'person' includes individual, partnership, and corporation, but does not include governmental unit, provided, however, that any governmental unit that acquires an asset from a person as a result of operation of a loan guarantee agreement, or as receiver or liquidating agent of a person, will be considered a person for purposes of section 1102 of this title."

**5.** Section 109(b) of Title 11 is as follows:

"(b) A person may be a debtor under chapter 7 of this this title only if such person is not—

(1) a railroad;

(2) a domestic insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, or credit union; or

(3) a foreign insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, or credit union, engaged in such business in the United States."

**6.** Subchapter IV is entitled, "Railroad Reorganization".

**7.** It has been suggested that a business may be "liquidated" through a Chapter 11 plan with the expectation and disclosure that the purchasers will operate the business post-confirmation. However, it would appear more correct to refer to such a procedure as a reorganization rather than as a liquidation which terminates the business.

ors has created mutually exclusive groups. Just as a consumer debtor may have a sufficiently regular income to allow repayment under Chapter 13, so too may an individual debtor operate a business which is eligible to reorganize under Chapter 11.

To qualify for relief under Chapter 11, a person must be a business enterprise or operate a business. A salaried person who displays the characteristics of a wage earner, does not operate a business, and whose debts and assets are primarily consumer debts and assets is not eligible to proceed under Chapter 11. *In re John I. Williams and Jane T. Williams,* Order and Memorandum of the United States District Court, Eastern District of Missouri, No. 83-1273C(1), filed on September 30, 1983, affirming the Memorandum Opinion of the United States Bankruptcy Court, EDMo, Case No. 82-02515(1), filed on January 20, 1983; *In re Ponn Realty Trust,* 4 B.R. 226, (Bkrptcy., D.Mass., 1980); *In re Mogul,* 17 B.R. 680, 8 B.C.D. 1024 (Bkrptcy., M.D.Fla. 1982).

The Debtors in this case have not attempted to argue that they are a business enterprise or that they operate a business. Their income is based on social security and pension payments, and irregular amounts collected from the rental of certain pasture land. The record indicates that they have no employees, and that their debts and assets are consumer debts and assets. Therefore, there is no business to reorganize in this case.

Although the Debtors have not requested a hearing to present evidence in support of their proposed plan, the Court must make the initial finding that serious questions exist concerning the plan's feasibility and whether it affords fair and equitable treatment to creditors, should these issues be presented in later proceedings to consider confirmation.

The Debtors have suggested that their position is supported by an opinion of the Bankruptcy Appellate Panels of the Ninth Circuit in *Warner v. Universal Guardian Corporation,* 30 B.R. 528, 10 BCD 1070 (BAP, 9th Cir., 1983). The opinion directed that the Bankruptcy Court upon remand should reexamine its conclusion that Chapter 11 is an improper vehicle when the Debtors are attempting to preserve a minimal equity in their residence. The opinion did not specifically address the a debtors' eligibility to proceed as non-business debtors, however; and in fact, the Bankruptcy Court decision was reversed because of a finding that the Debtor had not been notified in advance that dismissal of his case was contemplated.

The Debtors have also referred to a later Bankruptcy Court case which specifically addresses the question presented in the case at bar. In *In re Gregory,* 39 B.R. 405, 409 (Bkrptcy., M.D., Tenn., 1984) the Court stated that, "Chapter 11 is available to wage-earning, consumer debtors willing to master the procedural complexities and shoulder the attendant costs." To the extent that *Gregory* is contrary to the *Ponn Realty* case and the *Williams* case, supra, this Court rejects its holdings.

Finally, consideration must be given to the Debtors' contention that if this Chapter 11 case is dismissed, they "will be left without a remedy." Debtors' Memorandum in Opposition to Motion to Dismiss, page 7, filed on September 9, 1985. In fact, the Debtors are eligible to proceed under Chapter 13 or Chapter 7 of the Bankruptcy Code. Their inability to obtain confirmation of a plan in the previous Chapter 13 case was the result of their having attempted to affect the rights and interests of their creditors in a manner which clearly exceeded the statutory grant of authority to an individual with regular income. The Debtors' difficulties with the Bankruptcy Code in this matter are not the result of an unfair law or of punitive court decisions. Their situation may be such that the Bankruptcy Code cannot provide a vehicle to allow them to do what they want.

The relief offered by the Code is not available to every person in every economic situation. Furthermore, when recourse to the Bankruptcy laws is justified, the parties must acknowledge that they are not empowered to create new financial relation-

ships to their exact preference without regard to the limitations set out in the Code.

Therefore, the record here clearly shows that the individual Debtors do not operate a business and are not a business enterprise. Although they may technically qualify for an order for relief under Chapter 11, the fact that there is no business to reorganize is cause to grant the creditor's motion to dismiss under Section 1112.[8] *In re Williams,* supra.

---

8. Section 1112(b) is as follows:
"(b) Except as provided in subsection (3) of this section, on request of a party in interest, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—"