**In re Patrick C. CORMIER Angelina V. Cormier d/b/a Casey's Golden Pleasant, Cormier Properties, Sandwich Alley, Gapco and General Partners of Plaza 15 Limited Partnership, Debtors.**

**Bankruptcy No. 86–40305.**

United States Bankruptcy Court, D. Montana.

July 17, 1987.

Joel E. Guthals, Billings, Mont., for debtors.

Carey Matovich, Billings, Mont., for Neptune.

James P. Healow, Billings, Mont., for Alpha Olsen.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this Chapter 11 proceeding, a secured creditor Neptune Partnership has filed a motion for relief from the automatic stay pursuant to Section 362 of the Bankruptcy Code. Debtors resist said motion on the grounds that they propose to pay Neptune under the Chapter 11 Plan over 30 years and the property is therefore necessary for effective reorganization of the Debtors. Also pending is a motion by creditor Alpha Olsen to convert this case to Chapter 7 or dismiss this cause on grounds the case has been filed for over 13 months without any demonstration that the Debtors are able to effectuate a confirmable Plan.

The evidence shows that Neptune is owed $412,784.02 which includes interest on a principal debt of $394,000.00. As security for the repayment of such obligation, Neptune holds a first mortgage on real property located at 15 North 26th Street, Billings, Montana, described as Lot 14, Block 111, Original Town of Billings, Montana. In a prior hearing on valuation of Debtors' property, the Court fixed the value of the property at $382,400.00. Under the Debtors' Plan as originally proposed, the repayment of the Neptune debt was structured so that at the end of the 30 year period the Debtors would have to make a balloon payment of $1,148,042.00 because the amount of the annual payments failed to cover the interest due on such debt. Faced with such impossible burden, Debtors then amended the Plan by changing the repayment schedule as follows on the Neptune debt repayment:

| Original Plan | Amended |
|---|---|
| $1,000.00 1st 18 months | $1,000.00 first 12 months |
| 1,500.00 next 18 months | 1,500.00 next 12 months |
| 2,000.00 next 18 months | 2,000.00 next 12 months |
| 3,000.00 until 360th month | 2,500.00 next 12 months |
| | 3,000.00 next 24 months |
| | 3,500.00 next 24 months |
| | 4,000.00 next 22 years |

Under the amortization schedule presented by Neptune beginning with a debt repayment of $382,400.00 at 9% interest per year, the interest on the debt is $2,868.00 for the first month and $3,028.02 for the 12th month. By the time the payment increased to $4,000.00 beginning in the ninth year, the monthly payment will evidently pay the principal and interest. However, the Debtor testified that additional infusion of capital was necessary to make the Plan feasible, and that some limited partners were willing to make such loans to the Debtors. Without such loans, Debtors admit the Plan payments cannot be made. The Amended Plan and Disclosure Statement fail to specify the amount of such loans, or their sources, and thus it can be concluded that such "hope" is only a hope. Indeed, the last monthly operating report in the file reflects a net loss from the business of $237.87, without accruing any expense for interest payments on the secured debt, which exceeds over $4,000.00 per month. The Debtor testified at the hearing that there has been a continuing

loss in the business, without payments to any creditors, who have been held at bay awaiting the final decision on a Plan. As late as June 21, 1987, the Debtor acknowledged that yet another lien creditor in the sum of $11,349.00 had surfaced, and thus an additional debt burden has to be satisfied under the Amended Plan, which now will again have to be amended. In sum, the Plan is simply not feasible and there cannot be an effective reorganization as proposed by the Debtors. It is further interesting to note that at the hearing on the Amended Disclosure Statement, the Debtors' counsel stated that if the present motion for relief from stay was granted and the property lost on foreclosure, the Debtors would simply relocate their restaurant operation, thus leaving the impression that the property was not essential for future operation of the business. Finally, in the Debtors' response to the pending motion, no offer of adequate protection by way of payment of lost opportunity costs in accordance with *In re American Mariner*, 734 F.2d 426 (9th Cir.1984), was made by the Debtors.

A quote from *In re Bryan*, 69 B.R. 421, 423–425, 4 Mont.B.R. 50 (Bankr.Mont.1987) is pertinent to the present state of the record in this case:

"Courts will generally permit a reorganization case to proceed as long as there is a resonable amount of assets and a feasible operating business. *In re Widkowski*, 41 B.R. 723 (Bankr.D.N.D.1984); *In re 312 West 91st Street Co. Inc.*, 35 B.R. 346, 347 (Bankr.S.D.N.Y., 1983), which held:

'The legislative purpose of Chapter 11 is the speedy rehabilitation of financially troubled businesses. Without a reasonable amount of assets and a feasibly operating business there is no logic in continuing a Chapter 11.'

Moreover, inability to effectuate a Plan within a reasonable time may also be grounds for dismissal. *Matter of Sundale Associates Ltd.*, 48 B.R. 288 (Bankr. D.Fla.1984). Indeed courts have been quite clear that a reasonable prospect of reorganization means more than simply proposing high hopes of refinancing.

'No evidence of a realistic prospect of sale or refinancing was offered by the defendant. Statement of counsel merely reflected a vague possibility that there might be someone who would find an arrangement to refinance the mortgage with the plaintiff.' *In re Johnson*, 6 B.R. 100, 101 (Bankr. S.D.Fla.1980).'

Under the posture of this case, the language of *In re Matter of Terra Mar Associates*, 3 B.R. 462, 466 (Bankr.D. Connec.1980), is pertinent:

'The debtor's claim that it is inherent in any Chapter 11 proceeding, where the debtor's main asset consists of real estate and its business is the operation of that particular real estate, that the loss of the real estate thwarts any chance of a successful reorganization and, therefore, the property is indispensable to the rehabilitation of the debtor. "Indispensability of the property to the debtor's survival an hope of rehabilitation is not enough, of course, to justify continuation of the stay when rehabilitation is hopeless or the stay threatens injury to the lienor's security". Kennedy, *The Automatic Stay in Bankruptcy*, 11 U.Mich.L.J. Ref. 179, 244 (1978).'

\*    \*    \*    \*    \*    \*

*American Mariner* holds that one of the principles of adequate protection is a finding based on the evidence that the collateral is necessary for an effective reorganization. The holding of *In re Miller*, 58 B.R. 192, 201 (Bankr.N.D.Tex. 1985), is applicable to the facts in this case:

'Debtor did not plead that AGI was adequately protected. No offer of adequate protection was forthcoming at the hearing held October 2, 1985. Accordingly, the debtor failed in its burden to offer adequate protection as required by § 362(g). *Matter of Clarkstown Transmission Corp.*, 45 B.R. 807, 810 (S.D.N. Y.1985); *In re Klutzaritz*, 46 B.R. 368, 370 (Bankr.E.D.Pa.1985); *In re Truis Corp.*, 47 B.R. 3, 5 (Bankr.S.D.1984). When a debtor fails to present sufficient

evidence concerning the issue of adequate protection at the trial the burden of § 362(g) necessitates a modification of the automatic stay. *In re GSVC Restaurant Corp.*, 3 B.R. 491, 494 (Bankr.S. D.N.Y.) aff'd 10 B.R. 300 (S.D.N.Y. 1980).'

In *Matter of GSVC Restaurant Corp.*, supra, the Court held at 494:

'At the trial the Debtor presented no evidence whatsoever concerning the issue of adequate protection of the plaintiff's interest in the property. Since it was the debtor's burden to provide or propose a method of protection, the failure to meet this burden necessitates a modification of the automatic stay. See House Report No. 95–595, 95th Cong., 1st Sess. (1977) 388–40 U.S.Code Cong. & Admin.News, 1978, § 5787, 11 U.S.C. § 362(d)(1).'

The debtors have failed to sustain their burden of proof on any issue required of them under § 362(g), and therefore I am left with no recourse other than to terminate the automatic stay."

Likewise in this case, the visionary scheme proposed by the Debtors, which changes in direction as each new legal obstacle is presented, does not meet the required test that the property subject to the present action is necessary for an "effective" reorganization. I find and conclude the Amended Plan of Reorganization is not feasible and all efforts by the Debtors to attempt to make the Plan realistic are simply based on shifting numbers without any credible evidence to support such amendments. Time has come to bring a halt to the impossible, visionary and impractical Plan of the Debtors. Again, to quote *Bryan*, supra, at 425:

"A bankruptcy reorganization may not be used merely as a device for delay or be initiated solely for the purpose of frustrating foreclosures. *In re Bluebird Ltd. Partnership*, 41 B.R. 540 (Bankr.S. D.Cal.1984); *In re R & M Porter Farms, Inc.*, 38 B.R. 88 (Bankr.Cal.1984)."

IT IS ORDERED:

1. The motion of Neptune Partnership for relief from the automatic stay is granted;

2. The motion of Alpha Olsen to dismiss the Chapter 11 case is granted and this case is hereby dismissed.